ROBERTO ANGUIZOLA
ranguizola@ftc.gov
TRACEY THOMAS
tthomas@ftc.gov
DOTAN WEINMAN
dweinman@ftc.gov
Federal Trade Commission
600 Pennsylvania Avenue, NW, H-286
Washington, DC 20580
202-326-3284 (Anguizola)
202-326-2704 (Thomas)
202-326-3049 (Weinman)
202-326-3395 (Fax)

BLAINE T. WELSH
blaine.welsh@usdoj.gov
Assistant United States Attorney
Nevada Bar No. 4790
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, NV 89101
702-388-6336
702-388-6787 (Fax)

Attorneys for Plaintiff Federal Trade Commission

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) Case No. 2:09-CV-01349-PMP-RJJ |
| Plaintiff, | ) |
| v. | ) |
| GRANT CONNECT, LLC, et. al. | ) |
| Defendants. | ) |

**STIPULATED FINAL JUDGMENT AND ORDER FOR
PERMANENT INJUNCTION AND MONETARY RELIEF AS TO
DEFENDANTS VANTEX GROUP, LLC; VERTEK GROUP, LLC; PINK LP;
JULIETTE M. KIMOTO ASSET PROTECTION TRUST; AND JULIETTE M. KIMOTO**

1

1    Plaintiff Federal Trade Commission ("FTC") and Defendants Vantex Group, LLC;

2    Vertek Group, LLC; Pink LP; Juliette M. Kimoto Asset Protection Trust; and Juliette M.

3    Kimoto, now known as Juliette Madonna Rather (collectively "Vantex Defendants"), having

4    agreed to entry of this Order, hereby request that the Court enter this Order to resolve all matters

5    in dispute between them in this action.

6         **IT IS THEREFORE AGREED AND ORDERED** as follows:

7                                      **FINDINGS**

8         1.     This Court has jurisdiction over the subject matter of this case and there is good

9    cause to believe it has jurisdiction over Vantex Defendants;

10        2.     Venue is proper in this District under 15 U.S.C. § 53(b) and 28 U.S.C. §§ 1391(b)

11   and (c);

12        3.     The activities alleged in the Amended Complaint For Permanent Injunction and

13   Other Equitable Relief ("Amended Complaint") [D.E. 112] are in or affecting commerce as that

14   term is defined in Section 4 of the FTC Act, 15 U.S.C. § 44;

15        4.     The Amended Complaint states a claim upon which relief may be granted under

16   Sections 5(a), 12 and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a), 52 & 53(b), Sections 907(a) and

17   917(c) of the Electronic Fund Transfer Act, 15 U.S.C. §§ 1693e(a) &1693o(c), and Section

18   205.10(b) of Regulation E, 12 C.F.R. § 205.10(b);

19        5.     Vantex Defendants have entered into this Order freely and without coercion.

20   Vantex Defendants further acknowledge that they have read the provisions of this Order and are

21   prepared to abide by them;

22        6.     This Order is in addition to, and not in lieu of, any other civil or criminal remedies

23   that may be provided by law;

24        7.     Vantex Defendants waive all rights to seek appellate review or otherwise

25   challenge or contest the validity of this Order.  Vantex Defendants further waive and release any

1    claim they may have against the Commission, its employees, representatives or agents;

2        8.      Vantex Defendants agree that this Order does not entitle them to seek or to obtain

3    attorneys' fees as prevailing parties under the Equal Access to Justice Act, 28 U.S.C. § 2412,

4    amended by Pub. L. 104-121, 110 Stat. 847, 863-64 (1996), and they further waive any rights to

5    attorneys' fees that may arise under said provision of law; and

6        9.      Entry of this Order is in the public interest.

7                                    **DEFINITIONS**

8        For purposes of this Order, the following definitions shall apply:

9        1.      **"And"** and **"or"** shall be understood to have both conjunctive and disjunctive

10   meanings.

11       2.      **"Asset"** means any legal or equitable interest in, right to, or claim to, any real,

12   personal, or intellectual property including, but not limited to, chattel, goods, instruments,

13   equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries,

14   shares or stock, securities, inventory, checks, notes, accounts, credits, receivables (as those terms

15   are defined in the Uniform Commercial Code), lists of consumer names, accounts, credits,

16   premises, receivables, cash, trusts, including but not limited to asset protection trusts, and reserve

17   funds or other accounts associated with any payments processed on behalf of any Defendant,

18   including, but not limited to, such reserve funds held by a payment processor, credit card

19   processor, or bank.

20       3.      **"Assisting others"** means:  (a) performing customer service functions, including

21   receiving or responding to consumer complaints; (b) formulating or providing, or arranging for

22   the formulation or provision of, any marketing material, including sales scripts; (c) providing

23   names of, or assisting in the generation of, potential customers; (d) performing marketing or

24   billing services of any kind, including but not limited to, creating, hosting, or maintaining

25   websites, or recruiting affiliates; (e) providing customer relationship management services or

3

1  products; (f) providing accounting or financial management services; or (g) processing credit and

2  debit card payments.

3      4.    "**Charge**" means any amount charged to or debited from a consumer's credit

4  card, debit card, checking, savings, share or similar financial account, or collected from a

5  consumer by any other method.

6      5.    "**Continuity program**" means any plan, arrangement, or system under which a

7  consumer is periodically charged to maintain a service or periodically receive products,

8  including access to a "member only" website, without prior notification by the seller before each

9  charge to allow the consumer to cancel without incurring charges.

10     6.    "**Dietary supplement**" means:  (a) any product labeled as a dietary supplement or

11  otherwise represented as a dietary supplement; or (b) any pill, tablet, capsule, powder, softgel,

12  gelcap, liquid, or other similar form containing one or more ingredients that are a vitamin,

13  mineral, herb or other botanical, amino acid, probiotic, or other dietary substance for use by

14  humans to supplement the diet by increasing the total dietary intake, or a concentrate, metabolite,

15  constituent, extract, or combination of any ingredient described above, that is intended to be

16  ingested, and is not represented to be used as a conventional food or as a sole item of a meal or

17  the diet.

18     7.    "**Document**" has the meaning set forth in Federal Rule of Civil Procedure 34(a),

19  and includes writings, drawings, graphs, charts, Internet sites, webpages, websites, electronic

20  correspondence, including e-mail and instant messages, photographs, audio and video

21  recordings, contracts, accounting data, advertisements (including, but not limited to,

22  advertisements placed on the World Wide Web), FTP Logs, Server Access Logs, USENET

23  Newsgroup postings, World Wide Web pages, books, written or printed records, handwritten

24  notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled

25  checks and check registers, bank statements, appointment books, computer records, and other

4

1    data compilations from which information can be obtained and translated. A draft or non-

2    identical copy is a separate document within the meaning of the term.

3          8.      "**Essentially Equivalent Product**" means a product that contains the identical

4    ingredients, except for inactive ingredients (e.g., binders, colors, fillers, excipients), in the same

5    form and dosage, and with the same route of administration (e.g., orally, sublingually), as the

6    covered product; provided that the covered product may contain additional ingredients if reliable

7    scientific evidence generally accepted by experts in the field demonstrates that the amount and

8    combination of additional ingredients is unlikely to impede or inhibit the effectiveness of the

9    ingredients in the Essentially Equivalent Product.

10         9.      "**Food**" and "**drug**" have the meanings set forth in Section 15 of the Federal

11   Trade Commission Act, 15 U.S.C. § 55.

12         10.     "**FTC**" or "**Commission**" means Federal Trade Commission.

13         11.     "**Including**" means "including without limitation."

14         12.     "**Individual Defendant**" or "**Juliette Kimoto**" means defendant Juliette M.

15   Kimoto, now known as Juliette M. Rather.

16         13.     "**Material**" means likely to affect a person's choice of, or conduct regarding, any

17   goods or services.

18         14.     "**Negative-option program**" means any plan, arrangement, or system under

19   which a consumer's silence or failure to take affirmative action to reject products or services or

20   to cancel the agreement is interpreted by the seller as acceptance of the offer.

21         15.     "**Person**" means a natural person, an organization or other legal entity, including

22   a corporation, partnership, sole proprietorship, limited liability company, association,

23   cooperative, or any other group or combination acting as an entity.

24         16.     "**Preauthorized electronic fund transfer**" means an electronic fund transfer

25   authorized in advance to recur at substantially regular intervals.

5

17.     **"Receiver"** means Robb Evans & Associates LLC, the permanent receiver appointed by the Court in this action over the Vantex Receivership Defendants.

18.     **"Representatives"** means Defendants' officers, agents, servants, employees, and attorneys, and any other person or entity in active concert or participation with them who receives actual notice of this Order by personal service or otherwise.

19.     **"Vantex Corporate Defendants"** means Pink LP; Vantex Group, LLC; Vertek Group, LLC; Juliette M. Kimoto Asset Protection Trust; and their successors and assigns.

20.     **"Vantex Defendants"** means Individual Defendant and Vantex Corporate Defendants, individually, collectively, or in any combination.

21.     **"Vantex Receivership Defendants"** means Pink LP; Vantex Group, LLC; Vertek Group, LLC; Juliette M. Kimoto Asset Protection Trust; Dixie Investment Group, Inc.; Keystone Financial LLC; Kilohana LLC; and their successors and assigns.

22.     **"Vantex Receivership Estate"** means all assets of the Vantex Receivership Defendants, including but not limited to:  (a) any assets of the Vantex Receivership Defendants currently in the possession of the Receiver; (b) all the funds, property, premises, accounts, documents, mail, and other assets of, or in the possession or under the control of the Vantex Receivership Defendants, wherever situated, the income and profits therefrom, all sums of money now or hereafter due or owing to the Vantex Receivership Defendants, and any other assets or property belonging or owed to the Vantex Receivership Defendants; (c) any assets of the Vantex Receivership Defendants held in asset protection trusts; (d) any reserve funds or other accounts associated with any payments processed on behalf of any Vantex Receivership Defendant, including, but not limited to, such reserve funds held by a payment processor, credit card processor, or bank; and (e) all proceeds from the sale of such assets, except those assets the sale of which the Receiver in its sole discretion determines will not add appreciably to the value of the estate.

6

# I.

## BAN ON MARKETING OR SALE OF

## GRANT-RELATED PRODUCTS AND SERVICES

**IT IS THEREFORE ORDERED** that Vantex Defendants, whether acting directly or through any other person, officer, agent, servant, employee, sole proprietorship, partnership, corporation, limited liability company, subsidiary, division, branch, trust, other entity or device, are permanently restrained and enjoined from:

A.    Advertising, marketing, promoting, offering for sale, or selling any product or service, including a plan, program, or membership, that is represented, directly or by implication, to assist a consumer in any manner in obtaining a grant or other financial assistance from the government or any other source;

B.    Assisting others engaged in advertising, marketing, promoting, offering for sale, or selling any product or service, including a plan, program, or membership, that is represented, directly or by implication, to assist a consumer in any manner in obtaining a grant or other financial assistance from the government or any other source; and

C.    Holding any ownership interest, share, or stock in any business that engages in or assists in advertising, marketing, promoting, offering for sale, or selling any product or service, including a plan, program, or membership, that is represented, directly or by implication, to assist a consumer in any manner in obtaining a grant or other financial assistance from the government or any other source.

# II.

## BAN ON MARKETING OR SALE OF CREDIT-RELATED PRODUCTS

**IT IS FURTHER ORDERED** that Vantex Defendants, whether acting directly or through any other person, officer, agent, servant, employee, sole proprietorship, partnership, corporation, limited liability company, subsidiary, division, branch, trust, other entity or device,

1   are permanently restrained and enjoined from:

2         A.     Advertising, marketing, promoting, offering for sale, or selling any credit card,

3   line of credit, loan, or any other product or service, including a plan, program, or membership,

4   that is represented, directly or by implication, to extend credit or financing to a consumer;

5         B.     Assisting others engaged in advertising, marketing, promoting, offering for sale,

6   or selling any credit card, line of credit, loan, or any other product or service, including a plan,

7   program, or membership, that is represented, directly or by implication, to extend credit or

8   financing to a consumer; and

9         C.     Holding any ownership interest, share, or stock in any business that engages in or

10   assists in advertising, marketing, promoting, offering for sale, or selling any credit card, line of

11   credit, loan, or any other product or service, including a plan, program, or membership, that is

12   represented, directly or by implication, to extend credit or financing to a consumer; *provided,*

13   *however*, that this prohibition shall not apply to any publicly-traded company in which Vantex

14   Defendants own one (1) percent or less of the outstanding common shares.

## III.

### BAN ON MARKETING OR SALE OF
### WORK-FROM-HOME AND BUSINESS OPPORTUNITIES

18      **IT IS FURTHER ORDERED** that Vantex Defendants, whether acting directly or

19   through any other person, officer, agent, servant, employee, sole proprietorship, partnership,

20   corporation, limited liability company, subsidiary, division, branch, trust, other entity or device,

21   are permanently restrained and enjoined from:

22         A.     Advertising, marketing, promoting, offering for sale, or selling any product or

23   service, including a plan, program or membership, that is represented, directly or by implication,

24   to a consumer as a work-from-home opportunity, business opportunity, franchise, or other

25   opportunity to earn income other than as an employee, independent contractor or vendor of the

1   Vantex Defendants.

2       B.      Assisting others engaged in advertising, marketing, promoting, offering for sale,

3   or selling any product or service, including a plan, program or membership, that is represented,

4   directly or by implication, to a consumer as a work-from-home opportunity, business

5   opportunity, franchise, or other opportunity to earn income other than as an employee,

6   independent contractor or vendor of the Vantex Defendants; and

7       C.      Holding any ownership interest, share, or stock in any business that engages in or

8   assists in advertising, marketing, promoting, offering for sale, or selling any product or service,

9   including a plan, program or membership, that is represented, directly or by implication, to a

10  consumer as a work-from-home opportunity, business opportunity, franchise, or other

11  opportunity to earn income other than as an employee, independent contractor or vendor of the

12  Vantex Defendants; *provided, however*, that this prohibition shall not apply to any publicly-

13  traded company in which Vantex Defendants own one (1) percent or less of the outstanding

14  common shares.

15                                          **IV.**

16          **BAN ON VANTEX CORPORATE DEFENDANTS' MARKETING**

17            **OR SALE OF DIETARY SUPPLEMENTS AND NUTRACEUTICALS**

18          **IT IS FURTHER ORDERED** that Vantex Corporate Defendants, whether acting

19  directly or through any other person, officer, agent, servant, employee, sole proprietorship,

20  partnership, corporation, limited liability company, subsidiary, division, branch, trust, other

21  entity or device, are permanently restrained and enjoined from:

22      A.      Advertising, marketing, promoting, offering for sale, or selling any dietary

23  supplement, nutraceutical, or any other product that is not represented to be used as a

24  conventional food and is represented, directly or by implication, to assist a consumer in losing

25  weight, colon cleansing, building muscle, gaining energy, diminishing fatigue, or slowing down

9

1    the aging process;

2       B.      Assisting others engaged in advertising, marketing, promoting, offering for sale,

3 or selling any dietary supplement, nutraceutical, or any other product that is not represented to be

4 used as a conventional food and is represented, directly or by implication, to assist a consumer in

5 losing weight, colon cleansing, building muscle, gaining energy, diminishing fatigue, or slowing

6 down the aging process; and

7       C.      Holding any ownership interest, share, or stock in any business that engages in or

8 assists in advertising, marketing, promoting, offering for sale, or selling any dietary supplement,

9 nutraceutical, or any other product that is not represented to be used as a conventional food and

10 is represented, directly or by implication, to assist a consumer in losing weight, colon cleansing,

11 building muscle, gaining energy, diminishing fatigue, or slowing down the aging process;

12 *provided, however*, that this prohibition shall not apply to any publicly-traded company in which

13 Vantex Defendants own one (1) percent or less of the outstanding common shares.

14 **V.**

15 **CONDUCT PROHIBITION REGARDING JULIETTE KIMOTO'S MARKETING**

16 **OR SALE OF DIETARY SUPPLEMENTS AND NUTRACEUTICALS**

17       **IT IS FURTHER ORDERED** that Juliette Kimoto and her Representatives, whether

18 acting directly or through any sole proprietorship, partnership, corporation, limited liability

19 company, subsidiary, division, branch, trust, other entity or device, in connection with the

20 advertising, marketing, promoting, offering for sale, or selling of any food, drug, dietary

21 supplement, or nutraceutical is permanently restrained and enjoined from:

22       A.      Making, or assisting others in making, directly or by implication, including

23 though the use of a product name, endorsement, depiction, or illustration, any representation that

24 such product causes weight loss unless the representation is non-misleading and, at the time of

25 making such representation, Juliette Kimoto possesses and relies upon competent and reliable

1   scientific evidence that substantiates that the representation is true.  For purposes of this Section

2   V.A, competent and reliable scientific evidence shall consist of at least two adequate and well-

3   controlled human clinical studies of the product, or of an Essentially Equivalent Product,

4   conducted by different researchers, independently of each other, that conform to acceptable

5   designs and protocols and whose results, when considered in light of the entire body of relevant

6   and reliable scientific evidence, are sufficient to substantiate that the representation is true.

7   Juliette Kimoto shall have the burden of proving that a product satisfies the definition of

8   Essentially Equivalent Product.

9        B.     Making, or assisting others in making, directly or by implication, including

10   through the use of a product name, endorsement, depiction, or illustration, any representation

11   about the health benefits, performance, or efficacy of such product, including that such product:

12        1. Cleanses the colon;

13        2. Builds muscle;

14        3. Results in energy gain;

15        4. Diminishes fatigue; or

16        5. Slows down the aging process;

17        unless the representation is non-misleading, and, at the time of making such

18   representation, Juliette Kimoto possesses and relies upon competent and reliable scientific

19   evidence that is sufficient in quality and quantity based on standards generally accepted in the

20   relevant scientific fields, when considered in light of the entire body of relevant and reliable

21   scientific evidence, to substantiate that the representation is true.  For purposes of this Section

22   V.B, competent and reliable scientific evidence means tests, analyses, research, or studies that

23   have been conducted and evaluated in an objective manner by qualified persons and are

24   generally accepted in the profession to yield accurate and reliable results.

25

11

# VI.

## BAN ON CONTINUITY PROGRAMS AND

## NEGATIVE-OPTION MARKETING

**IT IS FURTHER ORDERED** that Vantex Defendants, whether acting directly or through any other person, officer, agent, servant, employee, sole proprietorship, partnership, corporation, limited liability company, subsidiary, division, branch, trust, other entity or device, are permanently restrained and enjoined from:

A.    Advertising, marketing, promoting, offering for sale, or selling any product or service in which consumers will be entered into a Continuity program or a Negative-option program;

B.    Assisting others engaged in advertising, marketing, promoting, offering for sale, or selling any product or service in which consumers will be entered into a Continuity program or a Negative-option program; and

C.    Holding any ownership interest, share, or stock in any business that engages in or assists in advertising, marketing, promoting, offering for sale, or selling any product or service in which consumers will be entered into a Continuity program or a Negative-option program; *provided, however*, that this prohibition shall not apply to any publicly-traded company in which Vantex Defendants own one (1) percent or less of the outstanding common shares.

## VII.

## BAN ON PREAUTHORIZED ELECTRONIC FUND TRANSFERS

**IT IS FURTHER ORDERED** that Vantex Defendants, whether acting directly or through any other person, officer, agent, servant, employee, sole proprietorship, partnership, corporation, limited liability company, subsidiary, division, branch, trust, other entity or device, are permanently restrained and enjoined from:

A.    Taking payment from consumers by preauthorized electronic fund transfer;

12

B.      Assisting others engaged in taking payment from consumers by preauthorized electronic fund transfer; and

C.      Holding any ownership interest, share, or stock in any business that takes payment from consumers by preauthorized electronic fund transfer; *provided, however*, that this prohibition shall not apply to any publicly-traded company in which Vantex Defendants own one (1) percent or less of the outstanding common shares.

## VIII.

## BAN ON USE OF TESTIMONIALS

**IT IS FURTHER ORDERED** that Vantex Defendants, whether acting directly or through any other person, officer, agent, servant, employee, sole proprietorship, partnership, corporation, limited liability company, subsidiary, division, branch, trust, other entity or device, are permanently restrained and enjoined from using testimonials in connection with the advertising, marketing, promoting, offering for sale, or selling of any product or service.

## IX.

## CONSUMER INFORMATION

**IT IS FURTHER ORDERED** that Vantex Defendants, whether acting directly or through any other person, officer, agent, servant, employee, sole proprietorship, partnership, corporation, limited liability company, subsidiary, division, branch, trust, other entity or device, are permanently restrained and enjoined from:

A.      Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), of any person that was obtained by any Vantex Defendant in connection with the sale of any product or service during the period from January 1, 2007, through the date of entry of this Order; and

      B.     Failing to dispose of such customer information in all forms in their possession, custody, or control within thirty (30) days after entry of this Order. Disposal shall be by means that protect against unauthorized access to the customer information, such as by burning, pulverizing, or shredding any papers, and by erasing or destroying any electronic media, to ensure that the customer information cannot practicably be read or reconstructed. *Provided, however,* that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by a law, regulation, or court order.

X.

**MONETARY RELIEF**

**IT IS FURTHER ORDERED** that:

      A.     Judgment in the amount of twenty-nine million, nine-hundred sixteen thousand, five hundred, thirty-three dollars and fifty-eight cents ($29,916,533.58) is entered in favor of the FTC and against Vantex Defendants jointly and severally with any other defendants found liable in this matter;

      B.     The monetary judgment set forth in Subsection A of this Section shall be suspended as to Vantex Defendants upon completion of the payment prescribed by Section X.C of this Order;

      C.     Effective upon entry of this Order, Juliette Kimoto shall pay the FTC ninety-one thousand, nine-hundred, twenty-two dollars and five cents ($91,922.05);

      D.     In addition to the payment prescribed by Section X.C., effective upon the entry of this Order, Vantex Defendants shall surrender to the FTC all control, title, dominion, and interest in the following assets:

      1.     All funds held by Cumorah Credit Union, including the accounts ending in 2-ID 19, 2-ID 71, 2-ID 72, and 6-ID01, in the name of Juliette Kimoto with the exception of the account ending in 2-ID 01 which was held for

14

the benefit of Juliette Kimoto's minor son;

2.  All funds held by Wells Fargo Bank in the name of Juliette Kimoto, including the accounts ending in 3258, 3148, 8395, 0649, and 7113;

3.  All funds held by State Bank of Southern Utah in the name of Juliette Kimoto, including the account ending in 0420;

4.  All assets of the Vantex Receivership Defendants;

5.  All funds held by JP Morgan Chase Bank N.A., in the name of Vantex Group LLC, including the accounts ending in 969-9, 972-2,

6.  All funds held by Wells Fargo Bank in the name of Vantex Group LLC including the account ending in 3087;

7.  All funds held by JP Morgan Chase Bank N.A., in the name of Vertek Group LLC, including the account ending in 076-2,

8.  All funds held by Wells Fargo Bank in the name of Vertek Group LLC including the account ending in 3148;

9.  All funds held by Wells Fargo Bank in the name of Kilohana LLC, including the account ending in 3258;

10.  Any and all interest in Mormon Boy Off-Broadway LLC and any profits derived from the "Confessions of a Mormon Boy" play identified in Item 15 of the Individual Financial Statement signed by Juliette Kimoto, and dated October 6, 2009;

11.  The 7.34 ct. Princess cut diamond stone identified in Item 20, Attachment 7, of the Individual Financial Statement signed by Juliette Kimoto, and dated October 6, 2009, and described in E.D.G.L. Laboratory Report No. 2680202222;

12.  The 2.35 ct. Princess cut diamond stone identified in Item 20, Attachment

15

7, of the Individual Financial Statement signed by Juliette Kimoto, and
dated October 6, 2009;

13.    All of the "Other Jewelry" identified in Item 20 of the Individual Financial
Statement signed by Juliette Kimoto, and dated October 6, 2009, including
the Wedding Ring Setting, Rolex Yacht Master, Rolex Ladies Two Tone,
Men's Gold Wedding Ring with Black Coral, and the Gucci Gold Ring;

14.    All of the "Guns" identified in Item 20 of the Individual Financial
Statement signed by Juliette Kimoto, and dated October 6, 2009, including
the 40 caliber Glock, Rifle 7.62X54 r m 1944 CAI, Shot gun Remington
870 express, and the Desert Eagle 50 caliber hand gun;

15.    The Yamaha Piano C7 identified in the Inventory of Personal Assets dated
January 26, 2010 and submitted by Juliette Kimoto to the FTC; and

16.    The 1967 Chevrolet Camaro titled to Juliette Kimoto with Vehicle
Identification Number 124377L157488.

E.    To effect the surrender of the funds identified in Sections X.C. and X.D.1-3, the
Court directs that Vantex Defendants and/or the entities holding the funds or their successors
shall, immediately upon receiving notice of this Order, remit the funds to the Commission by
certified check(s) or other guaranteed funds payable to the Federal Trade Commission, Financial
Management Office, or by wire transfer in accordance with directions provided by counsel for
the Commission.

F.    Immediately upon the entry of this Order, Vantex Defendants shall deliver
possession to the Receiver of the assets identified in Section X.D.4-16 (the "Vantex Assets").
The Receiver is hereby directed to market and sell the Vantex Assets and commence the
liquidation and dissolution of the Vantex Receivership Defendants in a commercially reasonable
manner pursuant to Sections XIII – XV below.  Vantex Defendants shall take all steps necessary

16

1   to assist the Receiver in the sale of the Vantex Assets and shall not add any encumbrances on the

2   Vantex Assets.  Any transfer fees, taxes, or other payments mandated from the transferor under

3   law shall be paid from the proceeds of each sale at the time such asset is sold.

4      G.  Vantex Defendants relinquish all dominion, control, and title to the assets

5   surrendered or paid to the fullest extent permitted by law.  Vantex Defendants shall make no

6   claim to or demand return of these assets, directly or indirectly, through counsel or otherwise.

7      H.  Vantex Defendants acknowledge and agree that the Receiver has authority under

8   this Order to take any steps necessary to dissolve and wind down the Vantex Receivership

9   Defendants and liquidate the assets of the Vantex Receivership Defendants, including the Vantex

10  Assets identified in Section X.D.4-16.

11     I.  In the event that it is necessary to execute additional documents to transfer or

12  liquidate assets of the Vantex Receivership Defendants or any assets that are to be surrendered

13  under this Order, or to dissolve and wind down the Vantex Receivership Defendants, Vantex

14  Defendants shall execute such documents within three (3) business days of a request from the

15  Receiver or the FTC.

16     J.  Any funds transferred or paid to the FTC pursuant to this Order shall be deposited

17  into a fund administered by the Commission or its agents to be used for equitable relief,

18  including, but not limited to, redress to consumers, and any attendant expenses for the

19  administration of such equitable relief.  In the event that direct redress to consumers is wholly or

20  partially impracticable or funds remain after the redress is completed, the Commission may

21  apply any remaining funds for such other equitable relief (including consumer information

22  remedies) as it determines to be reasonably related to Vantex Defendants' practices alleged in the

23  Amended Complaint.  Any funds not used for such equitable relief shall be deposited to the

24  United States Treasury as disgorgement.  Vantex Defendants shall have no right to challenge the

25  Commission's choice of remedies under this Section.

K.     Vantex Defendants shall have no right to contest the manner of distribution chosen by the Commission. No portion of any payment under the Judgment herein shall be deemed a payment of any fine, penalty, or punitive assessment.

L.     Vantex Defendants agree that the facts as alleged in the Amended Complaint filed in this action shall be taken as true without further proof in any bankruptcy case or subsequent civil litigation pursued by the Commission to enforce its rights to any payment or money judgment pursuant to this Order, including, but not limited to, a nondischargeability complaint in any bankruptcy case. Vantex Defendants further stipulate and agree that the facts alleged in the Complaint establish all elements necessary to sustain an action pursuant to, and that this Order shall have collateral estoppel effect for purposes of Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A).

M.     In accordance with 31 U.S.C. § 7701, Vantex Defendants are hereby required, unless they have done so already, to furnish to the Commission their taxpayer identifying numbers and/or social security numbers, which shall be used for the purposes of collecting and reporting on any delinquent amount arising out of Vantex Defendants' relationship with the government.

N.     Vantex Defendants agree that they will not, whether acting directly or through any corporation, partnership, subsidiary, division, trade name, device, or other entity, submit to any federal or state tax authority any return, amended return, or other official document that takes a deduction for, or seeks a tax refund or other favorable treatment for, any payment by Vantex Defendants pursuant to this Order. Vantex Defendants further agree that they will not seek a credit or refund of any kind for federal or state taxes or penalties for tax years 2004 to 2010. However, if Vantex Defendants otherwise obtain a credit or refund of any federal or state taxes or penalties paid for tax years 2004 to 2010, then Vantex Defendants shall promptly pay the Commission the amount of such credit or refund, together with any interest Vantex

18

1   Defendants have earned in connection with any such credit or refund.

2   ## XI.

3   ## COOPERATION WITH FTC COUNSEL

4   **IT IS FURTHER ORDERED** that Vantex Defendants shall, in connection with this

5   action or any subsequent investigations related to or associated with the transactions or the

6   occurrences that are the subject of the FTC's Amended Complaint, cooperate in good faith with

7   the FTC and appear, or cause its officers, employees, representatives, or agents to appear, at such

8   places and times as the FTC shall reasonably request, after written notice, for interviews,

9   conferences, pretrial discovery, review of documents, and for such other matters as may be

10  reasonably requested by the FTC.  If requested in writing by the FTC, Vantex Defendants shall

11  appear, or cause their officers, employees, representatives, or agents to appear, and provide

12  truthful testimony in any trial, deposition, or other proceeding related to or associated with the

13  transactions or the occurrences that are the subject of the Amended Complaint, without the

14  service of a subpoena.

15  ## XII.

16  ## RIGHT TO REOPEN

17  **IT IS FURTHER ORDERED** that:

18      A.      The Commission's agreement to, and the Court's approval of, this Order,

19  including, but not limited to, the suspension of the monetary judgment against Vantex

20  Defendants, is expressly premised upon the truthfulness, accuracy, and completeness of Juliette

21  Kimoto's financial condition, as represented in the Individual Financial Statement signed by

22  Juliette Kimoto, and dated October 6, 2009, including all attachments and supplemental

23  materials, the Inventory of Personal Assets dated January 26, 2010 and submitted by Juliette

24  Kimoto to the FTC, copies of tax returns for Juliette Kimoto, and statements made by Juliette

25  Kimoto during the March 18, 2010 meeting between her and the staff of the Division of

19

1   Marketing Practices of the Commission (collectively the "Juliette Kimoto Financial
2   Representations"), all of which the Commission relied upon in negotiating and agreeing to the
3   terms of this Order.  Juliette Kimoto expressly represents that the Juliette Kimoto Financial
4   Representations truthfully, accurately, and completely represent her financial condition as of the
5   date she stipulated to and signed this Order.

6         B.    If, upon motion by the Commission to the Court, the Court finds that any of the
7   Vantex Defendants, in any of the above-referenced materials, including the Juliette Kimoto
8   Financial Representations, or during any deposition, failed to disclose any asset, materially
9   misrepresented the value of any asset, or made any other material misrepresentation or omission,
10  monetary judgment will be entered against the Vantex Defendants in favor of the FTC, in the
11  amount of twenty-nine million, nine-hundred sixteen thousand, five hundred, thirty-three dollars
12  and fifty-eight cents ($29,916,533.58), which is the amount of injury suffered by consumers, all
13  of which will become immediately due and payable, less any payments already made.

14  *Provided, however*, that in all other respects, this Order shall remain in full force and
15  effect, unless otherwise ordered by the Court; and,

16  *Provided further*, that proceedings initiated under this provision would be in addition to,
17  and not in lieu of, any other civil or criminal remedies as may be provided by law, including any
18  proceedings that the Commission may initiate to enforce this Order.  For purposes of this
19  Section, Vantex Defendants waive the right to contest any of the allegations in the Amended
20  Complaint.

21  **XIII.**
22  **APPOINTMENT OF RECEIVER TO WIND DOWN**
23  **VANTEX RECEIVERSHIP DEFENDANTS AND LIQUIDATE ASSETS**

24      **IT IS FURTHER ORDERED** that Robb Evans & Associates LLC is hereby appointed
25  as the liquidating Receiver for the Vantex Receivership Defendants, with the full power of an

20

equity receiver, for the purpose of taking the necessary steps to wind down the businesses of the Vantex Receivership Defendants, liquidate the assets of the Vantex Receivership Defendants, liquidate the Vantex Assets, and pay any net proceeds to the FTC to satisfy the monetary judgment in this Order. The Receiver shall be the agent of this Court, and solely the agent of this Court, in acting as Receiver under this Order. The Receiver shall be accountable directly to this Court, and is authorized and directed to:

A.     Continue to exercise full control over the Vantex Receivership Defendants and continue to collect, marshal, and take custody, control, and possession of the Vantex Receivership Estate with full power to collect, receive, and take possession of all goods, chattels, rights, credits, monies, effects, lands, leases, books and records, limited partnership records, work papers, and records of accounts, including computer-maintained information, contracts, financial records, monies on hand in banks and other financial institutions, and other papers and documents of other individuals, partnerships, or corporations whose interests are now held by or under the direction, possession, custody, or control of the Vantex Receivership Defendants;

B.     Continue to have full control over the management and personnel of the Vantex Receivership Defendants, including the authority to remove, as the Receiver deems necessary or advisable, any officer, independent contractor, employee, or agent of the Vantex Receivership Defendants from control of, management of, or participation in, the affairs of the Vantex Receivership Defendants;

C.     Take all steps necessary or advisable, including issuing subpoenas, to locate and liquidate all other assets of the Vantex Receivership Defendants, cancel the Vantex Receivership Defendants' contracts, collect on amounts owed to the Vantex Receivership Defendants, and take such other steps as may be necessary to wind-down, terminate and dissolve the Vantex Receivership Defendants efficiently;

D.     Make payments and disbursements from the Vantex Receivership estate that are

21

necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Vantex Receivership Defendants prior to the date of entry of the temporary restraining order in this action, except payments that the Receiver deems necessary or advisable to secure and liquidate assets of the Vantex Receivership Defendants, such as rental payments or payment of liens;

E.     Take all steps necessary or advisable, including issuing subpoenas, to identify the name, address, telephone number, date of purchase, program or product purchased, total amount paid, amount of any full or partial refund or chargeback, and payment information for consumers who were charged by the Vantex Receivership Defendants, and provide the FTC, upon request, with any customer records or other business records of the Vantex Receivership Defendants;

F.     Continue to defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in its role as Receiver, or against the Vantex Receivership Defendants, as the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

G.     Continue to perform all acts necessary or advisable to complete an accounting of the Receivership assets, and prevent unauthorized transfer, withdrawal, or misapplication of assets;

H.     Continue to maintain accurate records of all receipts and expenditures that it makes as Receiver;

I.     Continue to enter into and cancel contracts, and purchase insurance as advisable or necessary;

J.     Continue to maintain bank accounts created as designated depositories for funds of the Vantex Receivership Defendants, and make all payments and disbursements from the Receivership estate from such an account;

22

K.     Perform all incidental acts that the Receiver deems advisable or necessary to execute its duties under this Order, including but not limited to: (1) the retention, employment, or dismissal of outside investigators, attorneys or accountants of the Receiver's choice to assist, advise, and represent the Receiver; (2) the movement and storage of any equipment, furniture, records, files, or other physical property of the Vantex Receivership Defendants; and (3) the retention, employment, or dismissal of auctioneers or other professionals to assist in the liquidation of the Vantex Receivership Defendants' assets;

L.     Continue to cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency;

M.     Dispose of, or arrange for the disposal of, the records of the Vantex Receivership Defendants no later than six months after the Court's approval of the Receiver's final report, except that:

1.     To the extent that such records are reasonably available, the Receiver shall arrange for records sufficient to ascertain the funds that an individual consumer paid to the Vantex Receivership Defendants to be retained for a minimum of one year from the entry of this Order, and

2.     If state or local law regulating the Vantex Receivership Defendants' business requires the retention of particular records for a specified period, the Receiver shall arrange for such records to be disposed of after the specified period has expired.

N.     Immediately enforce the judgment set forth in Section X by taking all necessary or appropriate post-judgment collection steps, including but not limited to obtaining and levying writs of execution and creating, perfecting and enforcing judgment liens on any real or personal property of the Vantex Defendants; and

O.     Immediately enforce any judgment entered by the Court pursuant to Section

23

XII.B. by taking all necessary or appropriate post-judgment collection steps, including but not limited to obtaining and levying writs of execution and creating, perfecting and enforcing judgment liens on any real or personal property of the Vantex Receivership Defendants.

P.      Take any and all steps that the Receiver concludes are appropriate to wind down the Vantex Receivership Defendants;

Q.      Enter into agreements in connection with the reasonable and necessary performance of the Receiver's duty to sell the Vantex Assets, including but not limited to the retention of assistants, agents, or other professionals to assist in the sale of the Vantex Assets; and

R.      Distribute to the Commission, without further order of the Court, the funds received from the sale of the Vantex Assets.

## XIV.

## COMPENSATION OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, in the possession or control of, or which may be received by, the Vantex Receivership Defendants. The Receiver shall apply to the Court for approval of specific amounts of compensation and expenses and must not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XV.

## RECEIVER'S FINAL REPORT AND DISBURSEMENT OF ASSETS

**IT IS FURTHER ORDERED** that

A.      No later than sixty (60) days from the date of the entry of this Order, the Receiver shall file and serve on the parties a report (the "Final Report") to the Court that details the steps

24

taken to dissolve the Vantex Receivership Estate. The Final Report must include an accounting of the Vantex Receivership Estate's finances and total assets and a description of what other actions, if any, must be taken to wind down the Receivership;

      B.     The Receiver shall mail copies of the Final Report to all known creditors of the Vantex Receivership Defendants with a notice stating that any objections to paying any assets of the Vantex Receivership Defendants to satisfy the Receiver's costs and expenses and the monetary judgment set forth in this Order must be submitted to the Court and served by mail upon the Receiver and the parties within thirty (30) days of the mailing of the Final Report;

      C.     No later than fifteen (15) days after submission of the Final Report, the Receiver shall file an application for payment of compensation and expenses associated with its performance of its duties as Receiver;

      D.     The Court will review the Final Report and any objections to the report and, absent a valid objection, will issue an order directing that the Receiver:

            1.     Pay the reasonable costs and expenses of administering the Vantex Receivership, including compensation of the Receiver and the Receiver's personnel authorized by Section XIV of this Order or other orders of this Court and the actual out-of-pocket costs incurred by the Receiver in carrying out its duties;

            2.     Pay all remaining funds to the FTC or its designated agent.

      E.     If subsequent actions (such as the completion of tax returns or further actions to recover funds for the Vantex Receivership Estate) are appropriate, the Receiver shall file an additional report or reports (the "Supplemental Reports") describing the subsequent actions and a subsequent application for the payment of fees and expenses related to the subsequent acts.

      F.     With Court approval, the Receiver may hold back funds for a specified period as a reserve to cover additional fees and costs related to actions to be addressed in a Supplemental

1  Report.  If the Receiver does not make a supplemental application for fees and expenses within

2  the specified period, or if funds remain in the reserve fund after the payment of fees and

3  expenses approved by the Court in response to such a supplemental application, all funds in the

4  reserve funds shall be immediately paid to the FTC or its designated agent.

5                                    **XVI.**

6                    **LIMITED LIFTING OF ASSET FREEZE**

7        **IT IS FURTHER ORDERED** that the freeze of Vantex Defendants' assets set forth in

8  the Preliminary Injunction Order As to Defendants Global Gold, Inc.; Pink LP; Vantex Group,

9  LLC; Vertek Group, LLC; Rachael A. Cook; Steven R. Henriksen; and Juliette M. Kimoto [D.E.

10  83], entered by this Court on September 22, 2009, shall be lifted to the extent necessary to turn

11  over Vantex Defendants' assets as required by Section X of this Order, and upon completion of

12  the turn-over, shall be lifted permanently only as to Defendant Juliette Kimoto.

13                                    **XVII.**

14                    **COMPLIANCE MONITORING**

15        **IT IS FURTHER ORDERED** that, for the purpose of (i) monitoring and investigating

16  compliance with any provision of this Order, and (ii) investigating the accuracy of the Juliette

17  Kimoto Financial Representations upon which the Commission's agreement to this Order is

18  expressly premised:

19        A.        Within ten (10) days of receipt of written notice from a representative of the

20  Commission, Vantex Defendants each shall submit additional written reports, which are true and

21  accurate and sworn to under penalty of perjury; produce documents for inspection and copying;

22  appear for deposition; and provide entry during normal business hours to any business location in

23  each Vantex Defendant's possession or direct or indirect control to inspect the business

24  operation;

25        B.        In addition, the Commission is authorized to use all other lawful means, including

26

but not limited to:

        1.      obtaining discovery from any person, without further leave of court, using the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, 45 and 69;

        2.      having its representatives pose as consumers and suppliers to Vantex Defendants, their employees, or any other entity managed or controlled in whole or in part by any Vantex Defendant, without the necessity of identification or prior notice; and

    C.      Vantex Defendants shall permit representatives of the Commission to interview any employer, consultant, independent contractor, representative, agent, or employee who has agreed to such an interview, relating in any way to any conduct subject to this Order. The person interviewed may have counsel present.

*Provided however,* that nothing in this Order shall limit the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to obtain any documentary material, tangible things, testimony, or information relevant to unfair or deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C. § 45(a)(1)).

## XVIII.

### COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that, in order that compliance with the provisions of this Order may be monitored:

    A.      For a period of five (5) years from the date of entry of this Order,

        1.      Individual Defendant shall notify the Commission of the following:

            a)      Any changes in Individual Defendant's residence, mailing addresses, and telephone numbers, within ten (10) days of the date of such change;

            b)      Any changes in Individual Defendant's employment status

27

(including self-employment), and any change in her ownership in any business entity within ten (10) days of the date of such change. Such notice shall include the name and address of each business that she is affiliated with, employed by, creates or forms, or performs services for; a detailed description of the nature of the business; and a detailed description of her duties and responsibilities in connection with the business or employment; and

        c)     Any changes in Individual Defendant's name or use of any aliases or fictitious names within ten (10) days of the date of such change;

        2.     Individual Defendant shall notify the Commission of any changes in structure of any business entity that Individual Defendant directly or indirectly controls, or has an ownership interest in, that may affect compliance obligations arising under this Order, including but not limited to incorporation or other organization; a dissolution, assignment, sale, merger, or other action; the creation or dissolution of a subsidiary, parent, or affiliate; or a change in the business name or address, at least thirty (30) days prior to such change, *provided* that, with respect to any such change in the business entity about which Individual Defendant learns less than thirty (30) days prior to the date such action is to take place, Individual Defendant shall notify the Commission as soon as is practicable after obtaining such knowledge.

        B.     One hundred eighty (180) days after the date of entry of this Order and annually thereafter for a period of five (5) years, Individual Defendant shall provide a written report to the FTC, which is true and accurate and sworn to under penalty of perjury, setting forth in detail the manner and form in which they have complied and are complying with this Order. This report shall include, but not be limited to:

        1.     Individual Defendant's then-current residence address, mailing addresses,

1  and telephone numbers;

2        2.    Individual Defendant's then-current employment status (including self-

3  employment), including the name, addresses, and telephone numbers of each business that

4  Individual Defendant is affiliated with, employed by, or performs services for; a detailed

5  description of the nature of the business; and a detailed description of Individual Defendant's

6  duties and responsibilities in connection with the business or employment;

7        3.    Any other changes required to be reported under Subsection A of this

8  Section; and

9        4.    A copy of each acknowledgment of receipt of this Order, obtained

10  pursuant to the Section titled "Distribution of Order."

11      C.    Individual Defendant shall notify the Commission of the filing of a bankruptcy

12  petition by Individual Defendant within fifteen (15) days of filing.

13      D.    For the purposes of this Order, Individual Defendant shall, unless otherwise

14  directed by the Commission's authorized representatives, send by overnight courier all reports

15  and notifications required by this Order to the Commission, to the following address:

16        Associate Director for Enforcement

17        Bureau of Consumer Protection

18        Federal Trade Commission

19        600 Pennsylvania Avenue, N.W.

20        Washington, D.C. 20580

21        RE:    *FTC v. Grant Connect, et al., 2:09-CV-01349-PMP-RJJ*

22

23  *Provided* that, in lieu of overnight courier, Individual Defendant may send such reports or

24  notifications by first-class mail, but only if Individual Defendant contemporaneously sends an

25  electronic version of such report or notification to the Commission at: DEBrief@ftc.gov.

E.      For purposes of the compliance reporting and monitoring required by this Order, the Commission is authorized to communicate directly with Individual Defendant.

## XIX.

## RECORDKEEPING

**IT IS FURTHER ORDERED** that, for a period of eight (8) years from the date of entry of this Order, Individual Defendant for any business for which she is the majority owner or directly or indirectly controls, is hereby restrained and enjoined from failing to create and retain the following records:

A.      Accounting records that reflect the cost of goods or services sold, revenues generated, and the disbursement of such revenues;

B.      Personnel records accurately reflecting:  the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable;

C.      Customer files containing the names, addresses, phone numbers, dollar amounts paid, quantity of items or services purchased, and description of items or services purchased, to the extent such information is obtained in the ordinary course of business;

D.      Complaints and refund requests (whether received directly or indirectly, such as through a third party), and any responses to those complaints or requests;

E.      Copies of all sales scripts, training materials, advertisements, or other marketing materials; and

F.      All records and documents necessary to demonstrate full compliance with each provision of this Order, including but not limited to, copies of acknowledgments of receipt of this Order required by the Sections titled "Distribution of Order" and "Acknowledgment of Receipt of Order" and all reports submitted to the FTC pursuant to the Section titled

30

"Compliance Reporting."

## XX.

## DISTRIBUTION OF ORDER

**IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry of this Order, Individual Defendant shall deliver copies of the Order as directed below:

A.    Individual Defendant as control person:  For any business that Individual Defendant controls, directly or indirectly, or in which Individual Defendant has a majority ownership interest, Individual Defendant must deliver a copy of this Order to (1) all principals, officers, directors, and managers of that business; (2) all employees, agents, and representatives of that business who engage in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure set forth in Subsection A.2 of the Section XVIII titled "Compliance Reporting."  For current personnel, delivery shall be within five (5) days of entry of this Order.  For new personnel, delivery shall occur prior to them assuming their responsibilities.  For any business entity resulting from any change in structure set forth in Section XVIII.A.2, delivery shall be at least ten (10) days prior to the change in structure.

B.    Individual Defendant must secure a signed and dated statement acknowledging receipt of the Order, within thirty (30) days of delivery, from all persons receiving a copy of the Order pursuant to this Section.

## XXI.

## ACKNOWLEDGMENT OF RECEIPT OF ORDER

**IT IS FURTHER ORDERED** that each Vantex Defendant, within five (5) business days of receipt of this Order as entered by the Court, must submit to the Commission a truthful sworn statement acknowledging receipt of this Order.

## XXII.

### RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

SO ORDERED this _ 1st day of September, 2011.

_____

The Honorable Philip M. Pro

United States District Judge

**IT IS SO STIPULATED:**

_____

ROBERTO ANGUIZOLA
TRACEY THOMAS
DOTAN WEINMAN
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW, H-286
Washington, DC 20580
Telephone:  (202) 326-3284 (Anguizola)
            (202) 326-2704 (Thomas)
            (202) 326-3049 (Weinman)
E-mail:  ranguizola@ftc.gov
         tthomas@ftc.gov
         dweinman@ftc.gov
Facsimile: (202) 326-3395
**Attorneys for Plaintiff Federal Trade
Commission**

_____

DOUGLASS MITCHELL
BOIES, SCHILLER & FLEXNER LLP
300 South Fourth Street, Suite 800
Las Vegas, Nevada 89101
Tel: 702-382-7300
Email: dmitchell@bsfllp.com
**Attorney for Defendants Juliette M.
Kimoto, Vantex Group, LLC; Vertek
Group, LLC; Pink LP; and Juliette M.
Kimoto Asset Protection Trust**

32

1   _____     _____
    JULIETTE M. KIMOTO,  now known as Juliette    VANTEX GROUP, LLC
2   Madonna Rather                                By: Juliette M. Kimoto on behalf of the
3                                                 Juliette M. Kimoto Asset Protection Trust, the
                                                  sole member of Vantex Group, LLC
4   _____     _____
5   VERTEK GROUP, LLC                             PINK LP
6   By: Juliette M. Kimoto on behalf of Pink LP,   By: Juliette M. Kimoto, General Partner
    the sole member of Vertek Group, LLC
7   _____
8   JULIETTE M. KIMOTO ASSET PROTECTION
9   TRUST
    By: Juliette M. Kimoto, Investment Trustee
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

33