UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

FEDERAL TRADE COMMISSION,       )
                                )
            Plaintiff,          )
                                )        2:09-CV-01349-PMP-RJJ
    v.                          )
                                )
GRANT CONNECT, LLC; GLOBAL      )           ORDER FOR
GOLD, INC.; HORIZON HOLDINGS,   )       PERMANENT INJUNCTION
LLC; O'CONNELL GRAY, LLC; PINK  )
LP; VANTEX GROUP, LLC; VERTEK   )
GROUP, LLC; RACHAEL A. COOK;    )
JAMES J. GRAY; STEVEN R.        )
HENRIKSEN; JULIETTE M. KIMOTO;  )
AND RANDY D. O'CONNELL,         )
                                )
            Defendants.         )
                                )

        The Court having this date entered an Order granting Plaintiff Federal Trade

Commission's Motion for Summary Judgment (Doc. #275),

        IT IS ORDERED that the following Permanent Injunction is hereby entered:

                        **FINDINGS OF FACT**

        1.  This Court has jurisdiction over the subject matter of this case and of the

parties hereto;

        2.  Venue is proper in this District under 15 U.S.C. § 53(b) and 28 U.S.C.

§§ 1391(b) and (c);

        3.  The activities alleged in the Amended Complaint for Permanent Injunction

and Other Equitable Relief ("Amended Complaint") (Doc. #112) are in or affecting

commerce as that term is defined in Section 4 of the FTC Act, 15 U.S.C. § 44;

4. The Amended Complaint states a claim upon which relief may be granted under Sections 5(a), 12, and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a), 52 & 53(b); Sections 907(a) and 917(c) of the Electronic Fund Transfer Act, 15 U.S.C. §§ 1693e(a) & 1693o(c); and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

5. Defendants have violated Sections 5(a), 12, and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a), 52 & 53(b); Sections 907(a) and 917(c) of the Electronic Fund Transfer Act, 15 U.S.C. §§ 1693e(a) & 1693o(c); and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b) as alleged in Counts I-VIII the Amended Complaint.

6. Entry of this Order for Permanent Injunction is in the public interest. It is also appropriate in light of Defendants' violations of Sections 5(a), 12, and 13 (b) of the FTC Act, 15 U.S.C. §§ 45(a), 52 & 53(b); Sections 907(a) and 917(c) of the Electronic Fund Transfer Act, 15 U.S.C. §§ 1693e(a) &1693o(c); and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b); and

7. This Order for Preliminary Injunction is remedial in nature and shall not be construed as payment of a fine, penalty, punitive assessment, or forfeiture.

**ORDER**

**DEFINITIONS**

For the purpose of this Preliminary Injunction ("Order"), the following definitions shall apply:

1. "And" and "or" shall be understood to have both conjunctive and disjunctive meanings.

2. "Asset" means any legal or equitable interest in, right to, or claim to, any real, personal, or intellectual property including, but not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, shares or stock, securities, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform

Commercial Code), cash, trusts, including but not limited to asset protection trusts, and reserve funds or other accounts associated with any payments processed on behalf of any Defendant, including, but not limited to, such reserve funds held by a payment processor, credit card processor, or bank.

3.  "Assisting others" means: (a) performing customer service functions, including receiving or responding to consumer complaints; (b) formulating or providing, or arranging for the formulation or provision of, any marketing material, including sales scripts; (c) providing names of, or assisting in the generation of, potential customers; (d) performing marketing or billing services of any kind, including but not limited to, creating, hosting, or maintaining websites, or recruiting affiliates; (e) providing customer relationship management services or products; (f) providing accounting or financial management services; or (g) processing credit and debit card payments.

4.  "Charge" means any amount charged or debited to a consumer's credit card, debit card, checking, savings, share or similar financial account, or collected from a consumer by any other method.

5.  "Continuity Program" means any plan, arrangement, or system under which a consumer is periodically charged to maintain a service or periodically receive products, including access to a "member only" website, without prior notification by the seller before each charge to allow the consumer to cancel without incurring charges.

6.  "Corporate Defendants" means Defendants Grant Connect, LLC; Horizon Holdings, LLC; O'Connell Gray, LLC; Consolidated Merchant Solutions, LLC; OS Marketing Group, LLC; Acai, Inc.; AllClear Communications, Inc.; Dragon Group, Inc.; Elite Benefits, Inc.; Global Fulfillment, Inc.; Global Gold, Inc.; Global Gold Limited; Healthy Allure, Inc.; MSC Online, Inc.; Paid to Process,

Inc.; Premier Plus Member, Inc.; Total Health, Inc.; and Vcomm, Inc.; individually, collectively, or in any combination.

7. "Defendants" means the Corporate Defendants and the Individual Defendants, individually, collectively, or in any combination.

8. "Dietary Supplement" means: (a) any product labeled as a dietary supplement or otherwise represented as a dietary supplement; or (b) any pill, tablet, capsule, powder, softgel, gelcap, liquid, or other similar form containing one or more ingredients that are a vitamin, mineral, herb or other botanical, amino acid, probiotic, or other dietary substance for use by humans to supplement the diet by increasing the total dietary intake, or a concentrate, metabolite, constituent, extract, or combination of any ingredient described above, that is intended to be ingested, and is not represented to be used as a conventional food or as a sole item of a meal or diet.

9. "Document" has the meaning set forth in the Federal Rule of Civil Procedure 34(a), and includes writing, drawings, graphs, charts, Internet sites, Web pages, Web sites, electronic correspondence, including e-mail and instant messages, photographs, audio and video recordings, contracts, accounting data, advertisements (including, but not limited to, advertisements placed on the World Wide Web), FTP Logs, Server Access Logs, USENET Newsgroup postings, World Wide Web pages, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of the term.

10.  "Food" and "drug" have the meanings set forth in Section 15 of the Federal Trade Commission Act, 15 U.S.C. § 55.

11.  "FTC" or "Commission" means the Federal Trade Commission.

12.  "Including" means "including without limitation."

13.  "Individual Defendants" means Defendants Rachael A. Cook; James J. Gray; Steven R. Henriksen; Michael L. Henriksen, Jr.; Tasha Jn Paul; Kyle R. Kimoto; and Randy D. O'Connell, individually, collectively, or in any combination.

14.  "Material" means likely to affect a person's choice of, or conduct regarding, goods or services.

15.  "Negative-option program" means any plan, arrangement, or system under which a consumer's silence or failure to take affirmative action to reject products or services or to cancel the agreement is interpreted by the seller or provider as acceptance of the offer.

16.  "Person" means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, cooperative, government or governmental subdivision or agency, or any other group or combination acting as an entity;

17.  "Preauthorized electronic fund transfer" means an electronic fund transfer authorized in advance to recur at substantially regular intervals.

18.  "Receiver" means Robb Evans & Associates LLC, the permanent receiver appointed by the Court in this action over the Corporate Defendants.

19.  "Receivership Defendants" means the Corporate Defendants.

20.  "Receivership Estate" means all assets of the Corporate Defendants, including but not limited to: (a) any assets of the Corporate Defendants currently in the possession of the Receiver; (b) all the funds, property, premises, accounts, documents, mail, and other assets of, or in the possession or under the control of

the Corporate Defendants, wherever situated, the income and profits therefrom, all sums of money now or hereafter due or owing to the Corporate Defendants, and any other assets or property belonging or owed to the Corporate Defendants; (c) any assets of the Corporate Defendants held in asset protection trusts; (d) any reserve funds or other accounts associated with any payments processed on behalf of any Corporate Defendant, including, but not limited to, such reserve funds held by a payment processor, credit card processor, or bank; and (e) all proceeds from the sale of such assets, except those assets the sale of which the Receiver in its sole discretion determines will not add appreciably to the value of the estate.

21.  "Testimonial" means any advertising message – including verbal statements, demonstrations, or depictions of the name, signature, likeness or other identifying personal characteristics of an individual or the name or seal of an organization – that consumers are likely to believe reflects the opinions, beliefs, findings, or experiences of a party other than the sponsoring advertiser, even if the views expressed by that party are identical to those of the sponsoring advertise.

# I.

## BAN ON MARKETING OR SALE OF

## GRANT-RELATED PRODUCTS AND SERVICES

**IT IS FURTHER ORDERED** that the Defendants, whether acting directly or through any other person, officer, agent, servant, employee, sole proprietorship, partnership, corporation, limited liability company, subsidiary, division, branch, trust, other entity or device, are permanently restrained and enjoined from:

A. Advertising, marketing, promoting, offering for sale, or selling any product or service, including a plan, program, or membership, that is represented, directly or by implication, to assist a consumer in any manner in obtaining a grant or other

financial assistance from the government or any other source;

B. Assisting others engaged in advertising, marketing, promoting, offering for sale, or selling any product or service, including a plan, program, or membership, that is represented, directly or by implication, to assist a consumer in any manner in obtaining a grant or other financial assistance from the government or any other source; and

C. Holding any ownership interest, share, or stock in any business that engages in or assists in advertising, marketing, promoting, offering for sale, or selling any product or service, including a plan, program, or membership, that is represented, directly or by implication, to assist a consumer in any manner in obtaining a grant or other financial assistance from the government or any other source.

## II.

### BAN ON MARKETING OR SALE OF CREDIT-RELATED PRODUCTS

**IT IS FURTHER ORDERED** that the Defendants, whether acting directly or through any other person, officer, agent, servant, employee, sole proprietorship, partnership, corporation, limited liability company, subsidiary, division, branch, trust, other entity or device, are permanently restrained and enjoined from:

A. Advertising, marketing, promoting, offering for sale, or selling any credit card, line of credit, loan, or any other product or service, including a plan, program, or membership, that is represented, directly or by implication, to extend credit or financing to a consumer;

B. Assisting others engaged in advertising, marketing, promoting, offering for sale, or selling any credit card, line of credit, loan, or any other product or service, including a plan, program, or membership, that is represented, directly or by implication, to extend credit or financing to a consumer; and

C. Holding any ownership interest, share, or stock in any business that engages in

or assists in advertising, marketing, promoting, offering for sale, or selling any credit card, line of credit, loan, or any other product or service, including a plan, program, or membership, that is represented, directly or by implication, to extend credit or financing to a consumer; provided, however, this prohibition shall not apply to any publicly-traded company in which the Defendants own one (1) percent or less of the outstanding common shares.

**III.**

**BAN ON MARKETING OR SALE OF**

**WORK-FROM-HOME AND BUSINESS OPPORTUNITIES**

**IT IS FURTHER ORDERED** that the Defendants, whether acting directly or through any other person, officer, agent, servant, employee, sole proprietorship, partnership, corporation, limited liability company, subsidiary, division, branch, trust, other entity or device, are permanently restrained and enjoined from:

A. Advertising, marketing, promoting, offering for sale, or selling any product or service, including a plan, program or membership, that is represented, directly or by implication, to a consumer as a work-from-home opportunity, business opportunity, franchise, or other opportunity to earn income other than as an employee, independent contractor, or vendor of the Defendants.

B. Assisting others engaged in advertising, marketing, promoting, offering for sale, or selling any product or service, including a plan, program or membership, that is represented, directly or by implication, to a consumer as a work-from-home opportunity, business opportunity, franchise, or other opportunity to earn income other than as an employee, independent contractor, or vendor of the Defendants; and

C. Holding any ownership interest, share, or stock in any business that engages in or assists in advertising, marketing, promoting, offering for sale, or selling any

product or service, including a plan, program or membership, that is represented, directly or by implication, to a consumer as a work-from-home opportunity, business opportunity, franchise, or other opportunity to earn income other than as an employee, independent contractor, or vendor of the Defendants; provided, however, this prohibition shall not apply to any publicly-traded company in which Defendants own one (1) percent or less of the outstanding common shares.

## IV.

## BAN ON MARKETING OR SALE

## OF DIETARY SUPPLEMENTS AND NUTRACEUTICALS

**IT IS FURTHER ORDERED** that the Defendants, whether acting directly or through any other person, officer, agent, servant, employee, sole proprietorship, partnership, corporation, limited liability company, subsidiary, division, branch, trust, other entity or device, are permanently restrained and enjoined from:

A. Advertising, marketing, promoting, offering for sale, or selling any dietary supplement, nutraceutical, or any other product that is not represented to be used as a conventional food and is represented, directly or by implication, to assist a consumer in losing weight, colon cleansing, building muscle, gaining energy, diminishing fatigue, or slowing down the aging process;

B. Assisting others engaged in advertising, marketing, promoting, offering for sale, or selling any dietary supplement, nutraceutical, or any other product that is not represented to be used as a conventional food and is represented, directly or by implication, to assist a consumer in losing weight, colon cleansing, building muscle, gaining energy, diminishing fatigue, or slowing down the aging process; and

C. Holding any ownership interest, share, or stock in any business that engages in or assists in advertising, marketing, promoting, offering for sale, or selling any

dietary supplement, nutraceutical, or any other product that is not represented to be used as a conventional food and is represented, directly or by implication, to assist a consumer in losing weight, colon cleansing, building muscle, gaining energy, diminishing fatigue, or slowing down the aging process; provided, however, this prohibition shall not apply to any publicly-traded company in which the Defendants own one (1) percent or less of the outstanding common shares.

**V.**

**BAN ON CONTINUITY PROGRAMS AND**

**NEGATIVE-OPTION MARKETING**

**IT IS FURTHER ORDERED** that the Defendants, whether acting directly or through any other person, officer, agent, servant, employee, sole proprietorship, partnership, corporation, limited liability company, subsidiary, division, branch, trust, other entity or device, are permanently restrained and enjoined from:

A. Advertising, marketing, promoting, offering for sale, or selling any product or service in which consumers will be entered into a Continuity program or a Negative-option program;

B. Assisting others engaged in advertising, marketing, promoting, offering for sale, or selling any product or service in which consumers will be entered into a Continuity program or a Negative-option program; and

C. Holding any ownership interest, share, or stock in any business that engages in or assists in advertising, marketing, promoting, offering for sale, or selling any product or service in which consumers will be entered into a Continuity program or a Negative-option program; provided, however, this prohibition shall not apply to any publicly-traded company in which the Defendants own one (1) percent or less of the outstanding common shares.

## VI.

## BAN ON PREAUTHORIZED ELECTRONIC FUND TRANSFERS

**IT IS FURTHER ORDERED** that the Defendants, whether acting directly or through any other person, officer, agent, servant, employee, sole proprietorship, partnership, corporation, limited liability company, subsidiary, division, branch, trust, other entity or device, are permanently restrained and enjoined from:

A. Taking payment from consumers by preauthorized electronic fund transfer;

B. Assisting others engaged in taking payment from consumers by preauthorized electronic fund transfer; and

C. Holding any ownership interest, share, or stock in any business that takes payment from consumers by preauthorized electronic fund transfer; provided, however, this prohibition shall not apply to any publicly-traded company in which the Defendants own one (1) percent or less of the outstanding common shares.

## VII.

## BAN ON USE OF TESTIMONIALS

**IT IS FURTHER ORDERED** that the Defendants, whether acting directly or through any other person, officer, agent, servant, employee, sole proprietorship, partnership, corporation, limited liability company, subsidiary, division, branch, trust, other entity or device, are permanently restrained and enjoined from using Testimonials in connection with the advertising, marketing, promoting, offering for sale, or selling of any product or service.

## VIII.

## CONSUMER INFORMATION

**IT IS FURTHER ORDERED** that the Defendants, whether acting directly or through any other person, officer, agent, servant, employee, sole proprietorship, partnership, corporation, limited liability company, subsidiary, division, branch, trust, other entity or

device, are permanently restrained and enjoined from:

A. Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), of any person that was obtained by any Defendant in connection with the sale of any product or service during the period from January 1, 2007, through the date of entry of this Order; and

B. Failing to dispose of such customer information in all forms in their possession, custody, or control within thirty (30) days after entry of this Order. Disposal shall be by means that protect against unauthorized access to the customer information, such as by burning, pulverizing, or shredding any papers, and by erasing or destroying any electronic media, to ensure that the customer information cannot practicably be read or reconstructed. Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by a law, regulation, or court order.

## IX.

## COOPERATION WITH FTC COUNSEL

**IT IS FURTHER ORDERED** that the Defendants shall, in connection with this action or any subsequent investigations related to or associated with the transactions or the occurrences that are the subject of the FTC's Amended Complaint, cooperate in good faith with the FTC and appear, or cause its officers, employees, representatives, or agents to appear, at such places and times as the FTC shall reasonably request, after written notice, for interviews, conferences, pretrial discovery, review of documents, and for such other matters as may be reasonably requested by the FTC.  If requested in writing by the FTC, the

Defendants shall appear, or cause their officers, employees, representatives, or agents to appear, and provide truthful testimony in any trial, deposition, or other proceeding related to or associated with the transactions or the occurrences that are the subject of the Amended Complaint, without the service of a subpoena.

## X.

## APPOINTMENT OF RECEIVER TO WIND DOWN THE
## RECEIVERSHIP DEFENDANTS AND LIQUIDATE ASSETS

**IT IS FURTHER ORDERED** that Robb Evans & Associates LLC is hereby appointed as the liquidating Receiver for the Receivership Defendants, with the full power of an equity receiver, for the purpose of taking the necessary steps to wind down the businesses of the Receivership Defendants, liquidate the assets of the Receivership Defendants, liquidate Receivership Defendants' Assets, and pay any net proceeds to the FTC to satisfy the monetary judgment in this Order. The Receiver shall be the agent of this Court, and solely the agent of this Court, in acting as Receiver under this Order. The Receiver shall be accountable directly to this Court, and is authorized and directed to:

A. Continue to exercise full control over the Receivership Defendants and continue to collect, marshal, and take custody, control, and possession of the Receivership Estate with full power to collect, receive, and take possession of all goods, chattels, rights, credits, monies, effects, lands, leases, books and records, limited partnership records, work papers, and records of accounts, including computer-maintained information, contracts, financial records, monies on hand in banks and other financial institutions, and other papers and documents of other individuals, partnerships, or corporations whose interests are now held by or under the direction, possession, custody, or control of the Receivership Defendants;

B. Continue to have full control over the management and personnel of the

Receivership Defendants, including the authority to remove, as the Receiver deems necessary or advisable, any officer, independent contractor, employee, or agent of the Receivership Defendants from control of, management of, or participation in, the affairs of the Receivership Defendants;

C. Take all steps necessary or advisable, including issuing subpoenas, to locate and liquidate all other assets of the Receivership Defendants, cancel the Receivership Defendants' contracts, collect on amounts owed to the Receivership Defendants, and take such other steps as may be necessary to wind-down, terminate and dissolve the Receivership Defendants efficiently;

D. Make payments and disbursements from the Receivership Estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order.  The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of the temporary restraining order in this action, except payments that the Receiver deems necessary or advisable to secure and liquidate assets of the Receivership Defendants, such as rental payments or payment of liens;

E. Take all steps necessary or advisable, including issuing subpoenas, to identify the name, address, telephone number, date of purchase, program or product purchased, total amount paid, amount of any full or partial refund or chargeback, and payment information for consumers who were charged by the Receivership Defendants, and provide the FTC, upon request, with any customer records or other business records of the Receivership Defendants;

F. Continue to defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or against the Receivership Defendants, as the Receiver

deems necessary and advisable to carry out the Receiver's mandate under this Order;

G. Continue to perform all acts necessary or advisable to complete an accounting of the Receivership assets, and prevent unauthorized transfer, withdrawal, or misapplication of assets;

H. Continue to maintain accurate records of all receipts and expenditures that he makes as Receiver;

I. Continue to enter into and cancel contracts, and purchase insurance as advisable or necessary;

J. Continue to maintain bank accounts created as designated depositories for funds of the Receivership Defendants, and make all payments and disbursements from the Receivership estate from such an account;

K. Perform all incidental acts that the Receiver deems advisable or necessary to execute its duties under this Order, including but not limited to: (1) the retention, employment, or dismissal of outside investigators, attorneys or accountants of the Receiver's choice to assist, advise, and represent the Receiver; (2) the movement and storage of any equipment, furniture, records, files, or other physical property of the Receivership Defendants; and (3) the retention, employment, or dismissal of auctioneers or other professionals to assist in the liquidation of the Receivership Defendants' assets;

L. Continue to cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency;

M. Dispose of, or arrange for the disposal of, the records of the Receivership Defendants no later than six months after the Court's approval of the Receiver's final report, except that:

///

1. To the extent that such records are reasonably available, the Receiver shall arrange for records sufficient to ascertain the funds that an individual consumer paid to the Receivership Defendants to be retained for a minimum of one (1) year from the entry of this Order, and

2. If state or local law regulating the Receivership Defendants' business requires the retention of particular records for a specified period, the Receiver shall arrange for such records to be disposed of after the specified period has expired.

N. Immediately enforce the non-suspended judgment set forth in Section IX by taking all necessary or appropriate post-judgment collection steps, including but not limited to obtaining and levying writs of execution and creating, perfecting and enforcing judgment liens on any real or personal property of the Defendants; and

O. Immediately enforce the judgment entered by the Court by taking all necessary or appropriate post-judgment collection steps, including but not limited to obtaining and levying writs of execution and creating, perfecting and enforcing judgment liens on any real or personal property of the Receivership Defendants.

P. Take any and all steps that the Receiver concludes are appropriate to wind down the Receivership Defendants;

Q. Enter into agreements in connection with the reasonable and necessary performance of the Receiver's duty to sell the Receivership Defendants' Assets, including but not limited to the retention of assistants, agents, or other professionals to assist in the sale of the Receivership Defendants' Assets; and

R. Distribute to the Commission, without further order of the Court, the funds received from the sale of the Receivership Defendants' Assets.

///

# XI.

## COMPENSATION OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, in the possession or control of, or which may be received by, the Receivership Defendants.  The Receiver shall apply to the Court for approval of specific amounts of compensation and expenses and must not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

# XII.

## RECEIVER'S FINAL REPORT AND DISBURSEMENT OF ASSETS

**IT IS FURTHER ORDERED** that:

A. No later than sixty (60) days from the date of the entry of this Order, the Receiver shall file and serve on the parties a report (the "Final Report") to the Court that details the steps taken to dissolve the Receivership Estate. The Final Report must include an accounting of the Receivership Estate's finances and total assets and a description of what other actions, if any, must be taken to wind down the Receivership;

B. The Receiver shall mail copies of the Final Report to all known creditors of the Receivership Defendants with a notice stating that any objections to paying any assets of the Receivership Defendants to satisfy the Receiver's costs and expenses and the monetary judgment set forth in this Order must be submitted to the Court and served by mail upon the Receiver and the parties within thirty (30) days of the mailing of the Final Report;

C. No later than fifteen (15) days after submission of the Final Report, the

Receiver shall file an application for payment of compensation and expenses associated with his performance of his duties as Receiver;

D. The Court will review the Final Report and any objections to the report and, absent a valid objection, will issue an order directing that the Receiver:

    1. Pay the reasonable costs and expenses of administering the Receivership, including compensation of the Receiver and the Receiver's personnel authorized by Section XI of this Order or other orders of this Court and the actual out-of-pocket costs incurred by the Receiver in carrying out his duties;

    2. Pay all remaining funds to the FTC or its designated agent.

E. If subsequent actions (such as the completion of tax returns or further actions to recover funds for the Receivership Estate) are appropriate, the Receiver shall file an additional report or reports (the "Supplemental Reports") describing the subsequent actions and a subsequent application for the payment of fees and expenses related to the subsequent acts.

F. With Court approval, the Receiver may hold back funds for a specified period as a reserve to cover additional fees and costs related to actions to be addressed in a Supplemental Report.  If the Receiver does not make a supplemental application for fees and expenses within the specified period, or if funds remain in the reserve fund after the payment of fees and expenses approved by the Court in response to such a supplemental application, all funds in the reserve funds shall be paid immediately to the FTC or its designated agent.

## XIII.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring and investigating compliance with any provision of this Order:

A. Within ten (10) days of receipt of written notice from a representative of the Commission, the Defendants each shall submit additional written reports, which are true and accurate and sworn to under penalty of perjury; produce documents for inspection and copying; appear for deposition; and provide entry during normal business hours to any business location in each Defendant's possession or direct or indirect control to inspect the business operation;

B. In addition, the Commission is authorized to use all other lawful means, including but not limited to:

1. Obtaining discovery from any person, without further leave of court, using the procedures prescribed by Federal Rules of Civil Procedure 30, 31, 33, 34, 36, 45 and 69;

2. Having its representatives pose as consumers and suppliers to the Defendants, their employees, or any other entity managed or controlled in whole or in part by any Defendant, without the necessity of identification or prior notice; and

C. The Defendants shall permit representatives of the Commission to interview any employer, consultant, independent contractor, representative, agent, or employee who has agreed to such an interview, relating in any way to any conduct subject to this Order.  The person interviewed may have counsel present. Provided however, that nothing in this Order shall limit the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to obtain any documentary material, tangible things, testimony, or information relevant to unfair or deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C. § 45(a)(1)).

///

///

# XIV.

## COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that, in order that compliance with the provisions of this Order may be monitored:

A. For a period of five (5) years from the date of entry of this Order,

1. The Individual Defendants shall notify the Commission of the following:

a) Any changes in the Individual Defendants' residence, mailing addresses, and telephone numbers, within ten (10) days of the date of such change;

b) Any changes in the Individual Defendants' employment status (including self-employment), and any change in his ownership in any business entity within ten (10) days of the date of such change. Such notice shall include the name and address of each business that he is affiliated with, employed by, creates or forms, or performs services for; a detailed description of the nature of the business; and a detailed description of his duties and responsibilities in connection with the business or employment; and

c) Any changes in the Individual Defendants' names or use of any aliases or fictitious names within ten (10) days of the date of such change;

2. The Individual Defendants shall notify the Commission of any changes in structure of any business entity that the Individual Defendants directly or indirectly control, or have an ownership interest in, that may affect compliance obligations arising under this Order, including but not limited to incorporation or other organization; a dissolution, assignment, sale,

merger, or other action; the creation or dissolution of a subsidiary, parent, or affiliate; or a change in the business name or address, at least thirty (30) days prior to such change, provided that, with respect to any such change in the business entity about which the Individual Defendants learn less than thirty (30) days prior to the date such action is to take place, the Individual Defendant shall notify the Commission as soon as is practicable after obtaining such knowledge.

B. One hundred eighty (180) days after the date of entry of this Order and annually thereafter for a period of five (5) years, the Individual Defendants shall provide a written report to the FTC, which is true and accurate and sworn to under penalty of perjury, setting forth in detail the manner and form in which they have complied and are complying with this Order.  This report shall include, but not be limited to:

1. The Individual Defendants' then-current residence address, mailing addresses, and telephone numbers;

2. The Individual Defendants' then-current employment status (including self-employment), including the name, addresses, and telephone numbers of each business that Defendants are affiliated with, employed by, or perform services for; a detailed description of the nature of the business; and a detailed description of Defendants' duties and responsibilities in connection with the business or employment;

3. Any other changes required to be reported under Subsection A of this Section; and

4. A copy of each acknowledgment of receipt of this Order, obtained pursuant to the Section titled "Distribution of Order."

C. The Individual Defendants shall notify the Commission of the filing of a

bankruptcy petition by any such Defendant within fifteen (15) days of filing.

D. For the purposes of this Order, the Individual Defendants shall, unless otherwise directed by the Commission's authorized representatives, send by overnight courier all reports and notifications required by this Order to the Commission, to the following address:

> Associate Director for Enforcement
> Bureau of Consumer Protection
> Federal Trade Commission
> 600 Pennsylvania Avenue, N.W.
> Washington, D.C. 20580
> RE: FTC v. Grant Connect, et al., 2:09-CV-01349-PMP-RJJ

Provided that, in lieu of overnight courier, the Individual Defendants may send such reports or notifications by first-class mail, but only if the Individual Defendants contemporaneously send an electronic version of such report or notification to the Commission at: DEBrief@ftc.gov.

E. For purposes of the compliance reporting and monitoring required by this Order, the Commission is authorized to communicate directly with the Individual Defendants.

## XV.

## RECORDKEEPING

**IT IS FURTHER ORDERED** that, for a period of eight (8) years from the date of entry of this Order, the Individual Defendants for any business for which they are the majority owner or directly or indirectly controls, are hereby restrained and enjoined from failing to create and retain the following records:

A. Accounting records that reflect the cost of goods or services sold, revenues generated, and the disbursement of such revenues;

B. Personnel records accurately reflecting: the name, address, and telephone number of each person employed in any capacity by such business, including as

an independent contractor; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable;

C. Customer files containing the names, addresses, phone numbers, dollar amounts paid, quantity of items or services purchased, and description of items or services purchased, to the extent such information is obtained in the ordinary course of business;

D. Complaints and refund requests (whether received directly or indirectly, such as through a third party) and any responses to those complaints or requests;

E. Copies of all sales scripts, training materials, advertisements, or other marketing materials; and

F. All records and documents necessary to demonstrate full compliance with each provision of this Order, including but not limited to, copies of acknowledgments of receipt of this Order required by the Sections titled "Distribution of Order" and "Acknowledgment of Receipt of Order" and all reports submitted to the FTC pursuant to the Section titled "Compliance Reporting."

## XVI.

## DISTRIBUTION OF ORDER

**IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry of this Order, the Individual Defendants shall deliver copies of the Order as directed below:

A. The Individual Defendants as control persons: For any business that the Individual Defendants control, directly or indirectly, or in which such Individual Defendants have a majority ownership interest, the Individual Defendant must deliver a copy of this Order to (1) all principals, officers, directors, and managers of that business; (2) all employees, agents, and representatives of that business

who engage in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure set forth in Subsection A.2. of the Section XV titled "Compliance Reporting." For current personnel, delivery shall be within five (5) days of entry of this Order. For new personnel, delivery shall occur prior to them assuming their responsibilities. For any business entity resulting from any change in structure set forth in Section XV.A.2, delivery shall be at least ten (10) days prior to the change in structure.

B. The Individual Defendants must secure a signed and dated statement acknowledging receipt of the Order, within thirty (30) days of delivery, from all persons receiving a copy of the Order pursuant to this Section.

**XVII.**

**ACKNOWLEDGMENT OF RECEIPT OF ORDER**

**IT IS FURTHER ORDERED** that each Defendant, within five (5) business days of receipt of this Order as entered by the Court, must submit to the Commission a truthful sworn statement acknowledging receipt of this Order.

**XVIII.**

**RETENTION OF JURISDICTION**

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes of construction, modification, and enforcement of this Order.

**IT IS SO ORDERED.**

DATED: October 25, 2011

_____
PHILIP M. PRO
United States District Judge